IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-CR-00241(2)-DWA |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES NASSIDA, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, United States Senior District Judge

# OPINION
# AND
# ORDER OF COURT

In this criminal action brought by the United States Government, Defendant, James Nassida, was charged with committing one count of Conspiracy to Commit Bank Fraud and Wire Fraud and committing one count of Bank Fraud. Defendant entered a plea of not guilty to the charges set forth in the Superseding Indictment, and a jury trial on both counts was held from October 4, 2016 to October 24, 2016. On October 24, 2016, the jury returned a verdict finding Defendant guilty on all counts. Pending is Defendant's Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure [ECF No. 149],[1] arguing that his retained trial counsel, Attorney Stanton Levenson, was asleep during a substantial portion of the trial, thus denying Defendant his Sixth Amendment right to effective assistance of counsel and requiring a new trial.[2] After careful consideration, and for the reasons set forth below, Defendant's Motion is granted.

---

[1] Federal Rule of Criminal Procedure 33 states that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

[2] Defendant acknowledges that ineffective assistance of counsel claims typically are addressed in the context of a proceeding pursuant to 28 U.S.C. § 2255. I agree with Defendant, however, that the alleged conduct of trial counsel in the instant matter was sufficiently egregious that it is in the interest of justice to address this issue at this juncture.

## I. Pertinent Facts

At trial, Defendant was represented by attorney Stanton Levenson. On October 18, 2016, Assistant United States Attorney, Cindy Chung, who second-chaired the trial for the government, brought to my attention (outside the presence of the jury) that Attorney Levenson appeared to have been sleeping the prior day during the testimony of one of the government's witnesses, Michael Keller. (Trial Transcript, 10/18/2016, at 2-5). When I questioned him about this incident, Mr. Levenson admitted that he dozed off during Mr. Keller's direct examination because he had taken an antihistamine that morning that made him drowsy. Id. at 3. At the time, Mr. Nassida testified that he did not feel prejudiced or disadvantaged by the incident and was prepared to go forward with Mr. Levenson representing him. Id. at 4-5. I also indicated on the record that I had noticed the incident and that I recalled it being brief, but that I did not know whether the jury had noticed it or not. I agreed with Attorney Chung, however, that Mr. Levenson's cross-examination of Mr. Keller appeared to be appropriate and on point and did not prejudice or disadvantage Mr. Nassida. Id. at 5.

Subsequent to this interaction, Defendant Nassida informed me that there were other times that he noticed Mr. Levenson was asleep during the trial and that he had written down the occasions when he observed Mr. Levenson sleeping contemporaneously in his trial notes. Id. at 271-278. Although Mr. Nassida continued to indicate that he was not unhappy with Mr. Levenson in his trial, I instructed Mr. Nassida to bring his trial notes to court the next day and to provide them to me unaltered. Id. During this interaction, Attorney Chung added that she was aware of at least two other occasions when Mr. Levenson may have been sleeping, but she was not sure – once during jury selection, and once the prior week during trial. Id.

During the afternoon of October 20, 2016, after I dismissed the jury for the day, I again addressed Mr. Levenson's alleged sleeping with Mr. Nassida and counsel for both sides. (Trial Transcript, 10/20/2016, at 265-276). During that discussion, Mr. Nassida provided me with his trial notes and also informed me that he and Mr. Levenson had gone at least a day without

speaking after the prior incident.  Mr. Nassida also stated, inter alia, that he was not a lawyer and did not know what questions Mr. Levenson should or should not have asked witnesses who were on the stand when he allegedly was sleeping, but that he did not think his attorney nodding off would ever be effective.  Id.  He also noted the names of five witnesses other than Mr. Keller during whose testimony he had noted that Mr. Levenson was sleeping.  Id. at 267.

On the morning of October 21, 2016, outside the jury's presence, Mr. Nassida informed me that he had major doubts about his ability to get a fair trial.  (Trial Transcript, 10/21/2016, at 2).  I again raised my concerns regarding the issue of Mr. Levenson sleeping, and Mr. Nassida formally requested a mistrial.  Id. at 2-4.  Mr. Levenson joined in Mr. Nassida's motion for a mistrial, stating that the attorney/client relationship between them had been destroyed and that there was no possibility Mr. Nassida would trust him again.  Id. at 8-9.  After discussion with counsel and Mr. Nassida, I denied Mr. Nassida's motion for a mistrial on the basis that the best protection for him would be an evidentiary hearing post-trial.  Id. at 129.  In that regard, I explained to Mr. Nassida that, if the jury returned a guilty verdict, then I would immediately appoint a new attorney to represent him and that I would hold a full evidentiary hearing to determine whether he was effectively denied counsel for a substantial portion of the trial.  Id. at 129-131.

On October 24, 2016, the jury returned a verdict of guilty against Mr. Nassida.  After the verdict, I interviewed each juror separately under oath about whether they had observed Mr. Levenson sleeping during trial.  (Trial Transcript, 10/24/2016, at 118-135).[3]  Juror Number 1 testified that s/he had seen Mr. Levenson sleeping at least three to four times, for maybe a minute each time.  Id. at 120-121.  Juror Number 2 testified that s/he witnessed Mr. Levenson

---

[3] Prior to the verdict, I also interviewed both alternate jurors under oath.  Tr. at 114-117.  Alternate Juror 1 testified that s/he noticed Mr. Levenson nodding off a couple of times.  The juror stated s/he did not know the duration of the sleeping, but did not think it was very long.  Id. at 114-115.  Alternate Juror 2 testified that s/he saw Mr. Levenson sleeping approximately three times, but did not know the duration of each occurrence.  Id. at 116-117.

3

sleeping maybe three or four times for "a few minutes probably at some points" and sometimes just "real quick dozing off." Id. at 121-122. Juror Number 3 testified that s/he remembered Mr. Levenson sleeping "maybe three times" for about thirty seconds. Id. at 123-124. Juror Number 4 testified that s/he noticed Mr. Levenson sleeping about twice for about thirty seconds. Id. at 124-125. Juror Number 5 testified that s/he thought Mr. Levenson was sleeping at least two times but could not estimate the duration. Id. at 125-126. Juror Number 6 testified that s/he did not personally notice Mr. Levenson sleeping, but that other jurors had talked about him sleeping and that they did not think it was very good that he had fallen asleep. Id. at 126-127. Juror Number 7 testified that it seemed like Mr. Levenson was sleeping a few times but that s/he did not know if he was sleeping or concentrating. Id. at 127-128. Juror Number 8 testified that s/he observed Mr. Levenson sleeping on "probably two" occasions, and that the duration was "not long." Id. at 129-130. Juror Number 9 testified that s/he saw Mr. Levenson "rest his eyes on occasion" but would not call it "full-fledged sleep." The juror stated that this occurred several times. Id. at 130-131. Juror Number 10 testified that s/he witnessed Mr. Levenson sleeping a few times and Defendant Nassida "having to kind of wake him" at least two times. Id. at 131-133. Juror Number 11 testified that s/he noticed Mr. Levenson sleeping around four or five times for a few minutes, "maybe three, four, five minutes, something like that." Id. at 133-134. Finally, Juror Number 12 testified that s/he believed s/he saw Mr. Levenson sleeping a couple times but that s/he was not really watching him. The juror did not think the duration was "all that long[, m]aybe a few minutes," but also stated that s/he could not really say because s/he was not "paying a whole lot of attention." Id. at 134-135. With the exception of one, none of the jurors could recall which witnesses were testifying during the times Attorney Levenson was sleeping. At the conclusion of the proceedings on October 24, 2016, I reiterated that I would appoint new counsel for Defendant Nassida and reminded him that, if he filed a motion for a new trial, I would hold a full evidentiary hearing on that motion. Id. at 138.

On October 28, 2016, I appointed attorney James Brink to represent Defendant. [ECF

No. 147]. On November 6, 2016, Mr. Brink, on behalf of Defendant, filed the instant Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure [ECF No. 149] and Brief in Support [ECF No. 150]. On April 11, 2017, I held a full evidentiary hearing on Defendant's Motion. Defendant presented evidence and argument at the hearing in addition to his written brief. The government presented evidence and argument at the hearing, but did not submit any written briefs.

At the hearing, Attorney Brink called Attorney Cindy Chung, Attorney Levenson, and Defendant Nassida as witnesses. Attorney Chung testified that that she had brought Mr. Levenson's sleeping to my attention on October 18, 2016, and that she had seen Mr. Levenson possibly sleeping for brief periods on three occasions during trial (once during jury selection, once during the week of October 10, 2016, and once during Mr. Keller's testimony). During his testimony, Attorney Levenson admitted that he had slept during trial but that he did not know how long. Mr. Levenson stated that he felt badly about falling asleep and that he had joined in Mr. Nassida's request for a mistrial because the relationship between them had deteriorated. On cross, Mr. Levenson testified that he was asleep for thirty seconds at most and that he often closes his eyes to concentrate. Mr. Nassida testified that he first noticed Mr. Levenson sleeping during jury selection, and that the sleeping continued to happen a few times a day, for a total of approximately twenty times. Mr. Nassida stated that, when he saw Mr. Levenson sleeping, he would nudge him awake and/or ask if he had heard what was being said at the time. Mr. Nassida described Mr. Levenson's sleeping as substantial and stated that, by the end of trial, the two had an unsettling relationship and that their communication eventually stopped for a few days. Mr. Nassida agreed that his contemporaneous trial notes reference at least ten instances of sleeping, but stated that he was too busy taking other notes to write down every instance. Mr. Nassida explained that the reason he told me during the trial that he did not feel prejudiced was because he was not a lawyer and he was afraid.

The government called witnesses Neal Caldwell, Al Vogt, and Attorney Tom Brown.

Neal Caldwell was an FBI agent present in the courtroom during most of the trial. He testified that he saw Defendant Nassida nudge Mr. Levenson awake several times. He stated that he also saw Mr. Levenson close his eyes on occasion, but that he appeared to be listening. Witness Al Vogt is a forensic accountant for the FBI who was present in the courtroom for almost all of the trial. He testified that he saw Mr. Levenson with closed eyes 1-2 times and that he saw Mr. Nassida nudge Mr. Levenson awake one time. Tom Brown, who represented co-Defendant Janna Nassida at trial, testified that he observed Mr. Levenson from behind during trial but had not seen him sleeping because of his positioning. Mr. Brown did notice, however, that problems had developed with Mr. Levenson and Mr. Nassida's relationship.

## II. Legal Analysis

In Strickland v. Washington, 466 U.S. 668 (1984), the U.S. Supreme Court held that, in order to succeed on a Sixth Amendment ineffective assistance of counsel claim, a defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. In Strickland's companion case, however, United States v. Cronic, 466 U.S. 648 (1984), the Supreme Court concluded that:

> there are circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified" and prejudice is presumed. The "[m]ost obvious" of these circumstances is "the complete denial of counsel." Where the defendant "is denied counsel at a critical stage of his trial," we are required "to conclude that a trial is unfair," and that an independent showing of prejudice is not required.

Muniz v. Smith, 647 F.3d 619, 623 (6th Cir. 2011) (quoting Cronic, 466 U.S. at 658-59); see also United States v. Ragin, 820 F.3d 609, 618 (4th Cir. 2016) ("Cronic errors are structural, requiring automatic reversal without any inquiry into the existence of actual prejudice.").

Although the Court of Appeals for the Third Circuit has not yet considered whether a presumption of prejudice under Cronic is warranted when a defendant's counsel falls asleep during trial, five sister circuits have addressed this issue, and all have concluded that "prejudice must be presumed when counsel sleeps either through a 'substantial portion of [a defendant's]

6

trial,' or at a critical time during trial." Id. at 619 (quoting Javor v. United States, 724 F.2d 831, 834 (9th Cir. 1984)); see also Muniz, 647 F.3d at 625-26 ("Muniz must show that his attorney slept through a substantial portion of the trial for the Cronic presumption to attach."); Burdine v. Johnson, 262 F.3d 336, 341 (5th Cir. 2001) ("[A] defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is repeatedly unconscious through not insubstantial portions of the defendant's . . . trial."); Tippins v. Walker, 77 F.3d 682, 687 (2d Cir. 1996) ("Tippins suffered prejudice, by presumption or otherwise, if his counsel was repeatedly unconscious at trial for periods of time in which defendant's interests were at stake."); Javor, 724 F.2d at 834 ("When a defendant's attorney is asleep during a substantial portion of his trial, the defendant has not received the legal assistance necessary to defend his interests at trial.")[4]. In Ragin, the most recent of these cases, the Court of Appeals for the Fourth Circuit explained:

> We agree with other circuits and hold that a defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is asleep during a substantial portion of the defendant's trial. In such circumstances, Cronic requires us to presume prejudice because the defendant has been constructively denied counsel. For good reason – "sleeping counsel is tantamount to no counsel at all."

820 F.3d at 619 (quoting United States v. DiTommaso, 817 F.2d 201, 216 (2d Cir. 1987)).

This presumption of prejudice is not a *per se* rule that applies any time defense counsel falls asleep during a criminal trial. Rather, each case turns on its specific facts. See Burdine, 262 F.3d at 349; Ragin, 820 F.3d at 622 n.11. If the "narrow circumstances of presumed prejudice under Cronic" do not apply, the defendant must show actual prejudice under Strickland. Ragin, 820 F.3d at 618.

After careful consideration, I conclude that the Court of Appeals for the Third Circuit would hold, consistent with its sister circuits, that a presumption of prejudice is warranted, and the defendant's Sixth Amendment right to counsel is violated, when the defendant's counsel is

---

[4] Although Javor narrowly pre-dated Strickland and Cronic, subsequent cases out of the Ninth Circuit have both applied the Cronic standard and cited Javor favorably in so doing. See, e.g., Frazer v. United States, 18 F.3d 778, 785 (9th Cir. 1994).

7

sleeping during a substantial portion of the trial. In so holding, I recognize that "if counsel sleeps, the ordinary analytical tools for identifying prejudice are unavailable. The errors and lost opportunities may not be visible in the record, and the reviewing court applying the traditional Strickland analysis may be forced to engage in 'unguided speculation.'" Tippins, 77 F.3d at 686 (quoting Javor, 724 F.2d at 834-35); see also Ragin, 820 F.3d at 619-20. "In other words, when counsel is absent – physically or due to sleep – 'the evil lies in what the attorney does not do, and is either not readily apparent on the record, or occurs at a time when no record is made.'" Ragin, 820 F.3d at 619-20 (quoting Javor, 725 F.2d at 834); see also id. at 612 ("We believe that when counsel for a criminal defendant sleeps through a substantial portion of the trial, such conduct compromises the reliability of the trial, and thus no separate showing of prejudice is necessary.").

The operative question here is whether Attorney Levenson slept during a substantial portion of Defendant Nassida's trial, triggering a presumption of prejudice under Cronic. As set forth above, numerous witnesses, including government witnesses, jurors, and Attorney Levenson himself, testified that Mr. Levenson was asleep or appeared to be asleep on at least one occasion, with multiple witnesses testifying that he was sleeping on multiple occasions. In addition, Defendant Nassida, who sat next to Mr. Levenson throughout trial, made at least ten references to Mr. Levenson sleeping in his trial notes and testified that he observed the attorney sleeping at least twenty times. Although other witnesses testified to fewer occasions, I find that Mr. Nassida's testimony is not inconsistent with that testimony. Importantly, it is possible, and indeed likely, that different witnesses saw Mr. Levenson sleeping on different occasions. In addition, many witnesses did not have Mr. Levenson directly in their line of sight and/or their attention probably was directed elsewhere (such as the witness box or the prosecutor) during some of the times in question. Mr. Nassida, on the other hand, was seated directly next to Mr. Levenson and had a strong interest in paying attention to his counsel and how that counsel was handling his case. Furthermore, the government has not pointed to any record evidence, nor

could I find any such evidence, that credibly rebuts Mr. Nassida's testimony or is otherwise sufficient to discredit that testimony.[5] Although Mr. Nassida obviously has a self-interest in obtaining a new trial, that reason alone is insufficient to doubt his testimony here. Mr. Nassida also testified that the sleeping incidents led to a total breakdown of communications between himself and Mr. Levenson, a fact with which Mr. Levenson agreed. Attorney Brown, who represented co-defendant Janna Nassida and sat directly behind Mr. Levenson at trial, testified that he likewise observed communication issues between Mr. Nassida and his counsel. The juror testimony further indicates that the jurors not only observed Mr. Levenson sleeping but also discussed his sleeping amongst themselves.[6]

After careful consideration, I find that these facts are sufficiently "extraordinary and egregious" to justify a presumption of prejudice under Cronic. See Ragin, 820 F.3d at 623-24. Based on these facts and the record before me, I can conclude only that Attorney Levenson slept, and therefore was not functioning as counsel, during a substantial portion of Mr. Nassida's trial, thus violating Defendant Nassida's Sixth Amendment rights.

As the Court of Appeals for the Fourth Circuit aptly explained in vacating a judgment of conviction and sentence based on sleeping defense counsel in Ragin, a case involving similar

---

[5] Much of the government's argument at the evidentiary hearing focused on whether or not Mr. Levenson would have done anything differently during trial absent his sleeping episodes and/or whether Mr. Levenson's sleeping otherwise affected the outcome of the case. As set forth above, such arguments speak primarily to the issue of "actual prejudice" under Strickland and not to the presumption of prejudice under Cronic. Again, the Supreme Court "has not required the defendant to explain how having counsel would have altered the outcome of his specific case" in order for the presumption of prejudice to apply. Burdine, 262 F.3d at 347. Indeed, "[s]uch a standard would require that the defendant, in effect, prove prejudice in order to receive a presumption of prejudice. That was not the standard announced in Cronic." Id. at 348; see also Ragin, 820 F.3d at 624 ("[A]s Cronic recognized, there are some egregious circumstances that 'are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" (quoting Cronic, 466 U.S. at 658)).

[6] The potential negative influence of sleeping defense counsel on the jury cannot be understated. As one judge explained, "a lawyer asleep in the courtroom is more harmful than one who is physically absent. A message is sent to the jury when a defense counsel sleeps, sometimes as long as ten minutes, the prosecutor continues to present evidence, the judge does nothing (says he didn't see it) – all the officers of the court pay it no mind. This is just a 'slow plea': going through the motions is the message." Burdine, 262 F.3d at 355-56 (concurring opinion).

facts,[7] the "trial was not a confrontation between adversaries in which any reasonable person can have confidence. Such an unfair battle – one in which one side is represented and the other is not – is a clear and direct violation of the Sixth Amendment." Ragin, 820 F.3d at 624.

Based on the foregoing, the jury verdict in this case is vacated, and Defendant's Motion for a New Trial [ECF No. 149] is granted.

---

[7] The facts in this case closely resemble those in Ragin. In that case, every witness stated that they had observed defense counsel asleep on at least one occasion; multiple witnesses testified he was asleep on multiple occasions; one juror testified that counsel appeared to be asleep frequently almost every day during the two-week trial; the jurors discussed and commented on counsel being asleep; no witnesses testified that the attorney was not asleep; and the attorney himself did not deny it. Ragin, 820 F.3d at 623. In vacating Ragin's conviction and remanding to the district court, the Court of Appeals strongly disagreed that the facts before it stood in stark contrast to the egregious facts presented in other cases where courts have presumed prejudice. Id. (comparing the facts in Ragin to those in Javor and Burdine); see also id. at 622 n.11 ("[W]hile we decline to dictate precise parameters for what must necessarily be a case-by-case assessment, we caution district courts that the scope of our holding today should not be limited to only the most egregious instances of attorney slumber.").

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 2:14-CR-00241(2)-DWA |
| vs. | ) | |
| JAMES NASSIDA, | ) | |
| Defendant. | ) | |

AMBROSE, United States Senior District Judge

**ORDER OF COURT**

AND NOW, this 1st day of May, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for New Trial [ECF No. 149] is GRANTED. The jury verdict rendered against Defendant James Nassida in this case is vacated, and a new jury trial is scheduled for September 5, 2017 at 9:30 a.m.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge