**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES            )
                           ) CR 14-241
                           )
      v.

JAMES NASSIDA

**OPINION AND ORDER**

**SYNOPSIS**

This matter followed an atypical path:  a jury trial resulting in a verdict of guilty, which was later vacated upon Defendant's Motion, and a subsequent guilty plea to committing wire and bank fraud in violation of 18 U.S.C. § 1349.  Following his plea, on January 10, 2018, Defendant was sentenced to an agreed-upon term of imprisonment of 78 months, followed by a term of supervised release.   According to the Bureau of Prisons ("BOP") inmate locator, Defendant is presently housed at Hazelton USP with a release date of October 15, 2023.

Previously, Defendant filed a counseled Motion for Early Release, alleging health conditions that place him at elevated risk of death from coronavirus.  By Order dated April 23, 2020, this Court denied the Motion without prejudice, for failure to exhaust.  A counseled Amended Motion for Early Release soon followed.  The Amended Motion, like the first, alleged health conditions that create an elevated risk of death. By Order dated May 21, 2020, the Amended Motion was also denied without prejudice, for failure to demonstrate exhaustion.

1

Presently, Defendant has filed a pro se Motion seeking compassionate release pursuant to 18 U.S.C. § 3582, addressing both his medical conditions and family circumstances.[1] The Court has granted defense counsel's request to withdraw from representation, and thus will consider Defendant's pro se filing. The Government responded to Defendant's pro se Motion, and the Probation Office has submitted its position. At present, the Government acknowledges that exhaustion requirements have been met, but opposes Defendant's Motion on substantive grounds. Probation, in essence, takes no position on the matter at this juncture. The Court has considered Defendant's Motion according to the liberal standards applicable to pro se litigants. For the following reasons, Defendant's Motion will be denied.

## OPINION

A court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582 if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that "extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13.[2] According to pertinent application notes, circumstances that might constitute extraordinary and compelling reasons include "a serious physical or medical condition," as well as a defendant's family circumstances. Id. at comment. n. 1(A), (C)). In addition, any reduction in sentence must be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A). To merit compassionate release, Defendant must show more than concerns about possibly being exposed to or contracting the virus. See, e.g., United States v. Kealoha, No. 17-00555, 2020 U.S. Dist. LEXIS 117698, at *17 (D. Haw. July 6,

---

[1] Defendant's Motion refers both to release and home confinement. Within this District, Courts have found that "the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so." United States v. Delacruz, No. 3:17-CR-77, 2020 U.S. Dist. LEXIS 108005, at *14 (M.D. Pa. June 19, 2020)

[2] While the Sentencing Commission's policy statement is not dispositive, it constitutes "helpful guidance." Doolittle, 2020 U.S. Dist. LEXIS 127801, at *6.

2020).  Similarly, "the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release …." United States v. Rader, No. 17-0089, 2020 U.S. Dist. LEXIS 128835, at *8 (D. Md. July 22, 2020).

 "Extraordinary and compelling reasons" may exist based on the defendant's serious physical or medical condition, if that condition substantially diminishes his ability to provide self-care within the correctional facility environment and from which he is not expected to recover. U.S.S.G. § 1B1.13, comment. n. 1(A)(ii)).

Defendant asserts that his conditions, including sleep apnea, hypertension, high cholesterol, chronic bronchitis, an elevated BMI and depression, place him at an elevated risk of infection and death from COVID-19.  He asserts that his bronchitis is actively treated with an inhaler, and that he has experienced two severe occurrences in 2020.

Defendant submits no medical records regarding his conditions, or their severity or effects, and neither asserts nor submits evidence that they diminish his ability to provide self-care.[3]  There is no suggestion of other complicating factors, such as, for example, that his conditions are progressive or uncontrolled by medication. Defendant has, however, submitted a communication from the Warden, indicating that information from his medical provider led to the conclusion that he does not "suffer from a progressive illness that has affected [his] ability to self-care" and is "not confined to a bed or chair 50% of waking hours."  Defendant was born in 1967, and thus is not in a particularly high-risk age group. www.cdc.gov/coronavirus (accessed

---

[3] Conditions such as Defendant's sleep apnea, hypertension, and depression were presented to the Court prior to sentencing.  According to the Centers for Disease Control and Prevention ("CDC") website, hypertension "might" place a person at elevated risk of severe illness from COVID-19.  Sleep apnea and depression do not appear on the list of conditions that create an elevated risk from COVID-19.  Chronic bronchitis is included under COPD on the CDC site, as a condition that "is known to increase [the] risk of severe illness from COVID-19." www.cdc.gov/coronavirus (accessed Aug. 7, 2020).  However, Defendant has submitted no documentation relating to his alleged chronic bronchitis diagnosis, including evidence relating to its existence, extent, treatment, and severity.

Aug. 7, 2020).  As the Government suggests, Defendant's seven-day-per-week prison work schedule might belie any claim of diminished ability.  Further, according to the BOP website, USP Hazelton has no positive COVID-19 inmate tests among its 1,189 inmates, and no positive staff cases. www.bop.gov/coronavirus; www.bop.gov/locations/institutions/haz/ (accessed Aug 13, 2020).  Understandably, Defendant and his family fear exposure to COVID-19 and want to have him home.  Nonetheless, Defendant has not demonstrated that his circumstances, under applicable standards and guidelines, constitute extraordinary and compelling reasons to grant early release.  Based on the present record, this conclusion is consistent with extant judicial decisions.  Cf., e.g., Kealoha, 2020 U.S. Dist. LEXIS 117698, at *16 (conditions including sleep apnea, hypertension, and morbid obesity did not warrant release); United States v. Mason, No. 18-329, 2020 U.S. Dist. LEXIS 126090, at *3 (W.D. Pa. July 17, 2020) (conditions including hypertension, cancer in remission, and Crohn's disease did not warrant release). [4]

In addition to a defendant's medical condition, "extraordinary and compelling" reasons may exist based on "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse … when the defendant would be the only available caregiver for the spouse …."  U.S.S.G. § 1B1.13, comment. n. 1(C)(i)-(ii)).  "Incapacitated" has been interpreted to mean "completely disabled," and to refer to someone who "cannot carry on any self-care and is totally confined to a bed or chair." [5]  United

---

[4] The cases for which Defendant provides citations involved situations materially different from the case at bar: United States v. Bess, No. 16-156, 2020 U.S. Dist. LEXIS 71056 (W.D.N.Y. Apr. 22, 2020) (defendant with heart conditions and diabetes, housed at facility with numerous inmate cases COVID-19, and had served half his sentence); United States v. Agomuoh, No. 16-20196, 2020 U.S. Dist. LEXIS 86562, at *1 (E.D. Mich. May 18, 2020) (69-year-old defendant with heart disease and diabetes); United States v. Amarrah, No. 17-20464, 2020 U.S. Dist. LEXIS 80396 (E.D. Mich. May 7, 2020) (defendant with diabetes, hypertensive heart disease, and asthma).
[5] In Collins, 2020 U.S. Dist. LEXIS 5001, at *10 (quoting BOP Program Statement § 5050.50, at 10-11), the Court further noted as follows:

When evaluating the incapacitation of a spouse, adequate information and documentation should be provided including, but not limited to, a statement and verifiable medical documentation regarding the

States v. Collins, No. 15-10188, 2020 U.S. Dist. LEXIS 5001, at *10 (D. Kan. Jan. 13, 2020)

(quoting BOP Program Statement § 5050.50, at 10); see also United States v. Doolittle, No. 19-

501, 2020 U.S. Dist. LEXIS 127801, at *8-9 (D.N.J. July 21, 2020).   This inquiry involves the

"critical consideration" of whether "no person other than the defendant is available to serve as a

caretaker of a minor or incapacitated family member." United States v. Goldberg, 2020 U.S.

Dist. LEXIS 63885, at *4 (D.D.C. Apr. 13, 2020).

In that vein, Defendant refers to his wife's treatment for pre-breast cancer and her knee

replacement surgery scheduled for late July, 2020, as well as his children's medical conditions.

Defendant states that his 23-year-old daughter suffers from dysautonomia, dysautonomia is a

neurological disorder that causes sudden unconsciousness. He avers that his daughter's

pacemaker, which she states that she has had since age 20, "stem[s] these occurrences," but that

she requires regular observation.  She lives with her mother, Defendant's wife.  A letter from

Defendant's 21-year-old son, who has Crohn's disease and does or will soon reside at St.

Vincent College, indicates that both he and his sister will be resuming in-person or online college

classes in August, 2020.  The record also reflects that Defendant's parents-in-law are elderly and

suffer from health issues, and that Defendant has no other surviving relatives.  According to

Defendant, therefore, relatives are unable to render significant assistance.

I have carefully reviewed each of the patently heartfelt letters of support submitted on

Defendant's behalf by his children, wife, community members, and friends.  One cannot be

immune to the hardships that Defendant's incarceration place on his family, and the losses that

they have suffered.  The Court, however, is bound by legal standards under which compassion

---

spouse's incapacitation, [and] a statement and letters of documentation that the inmate is the only family member capable of caring for the spouse….

alone cannot support a grant of relief.  As discussed supra, applicable standards contemplate a situation involving minor children, or an incapacitated spouse.  Defendant's children are adults. The record contains no evidence regarding the nature, effects, or duration of Defendant's wife's pre-cancer treatment protocol, or her projected condition post-surgery, and no suggestion of resulting incapacity.  In addition, while Defendant's absence clearly burdens his family, the record does not suggest that he is the only person available to assist his wife.  I do not doubt his family's assertions that it will be intimidating and overwhelming for Defendant's children to care for his wife after her surgery.  However, there is no suggestion that their circumstances, even if complicating, render them unable to provide care.  As stated elsewhere by my sister Court: "The Court recognizes that the family members of incarcerated individuals often struggle to cope without their relative's daily presence and aid, but Defendant's application does not meet the criteria for compassionate release under the law."  Doolittle, 2020 U.S. Dist. LEXIS 127801, at *3.

Finally, because Defendant's Motion refers to the "catchall" provision of Section 3582, I will consider the premise that relief may be granted where there exists an extraordinary and compelling reason other than, or in combination with, reasons such as medical condition or family circumstances. U.S.S.G. § 1B1.13, comment. n.1(D); United States v. Millan, No. 91-CR-685, 2020 U.S. Dist. LEXIS 59955, at *17 (S.D.N.Y. Apr. 6, 2020).  As my colleague has observed, "a growing consensus of courts across the country have concluded that, after the First Step Act, the Commission's policy statement 'does not constrain a court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A).'"  United States v. Somerville, No. 12-225, 2020 U.S. Dist. LEXIS 93935, at *15 (W.D. Pa. May 29, 2020). At a minimum, the "catchall" "requires a justification

for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate)." Id. at *18.

I have considered the totality of the circumstances presented here. Those circumstances include Defendant's averments regarding his and his family members' situations, as well as the fact that Defendant is a non-violent first-time offender whose crimes occurred over a decade ago, his conduct while incarcerated, and the circumstances and number of active, confirmed COVID-19 infections at USP Hazelton. I have also considered the fact that Defendant has served less than half of his sentence, which was both agreed-upon and significantly below the otherwise applicable Guideline range. In addition, his crime was serious, occurred over a span of years, and caused significant harm to its victims. Defendant's daughter's health condition, as well as Defendant's sleep apnea, hypertension, and depression were made known to the Court at the time of sentencing. Having considered all of the circumstances and Defendant's submissions, I conclude that Defendant presents a situation that is not extraordinary and compelling, and that early release is not warranted at this time.

## CONCLUSION

Because Defendant's two previous Motions were denied for failure to exhaust, the instant pro se Motion is the first to be considered on its merits. In addition, Defendant states that he has requested medical records, but had not received them as of the filing of his Motion. Given the gravity of the issues at stake, and liberal pleading standards applicable to pro se submissions, Defendant's Motion will once again be denied without prejudice. He is advised, however, that the Court's willingness to consider these issues will, at some point, come to an end. Should he choose to seek relief again, he should make every effort to marshal and submit pertinent documentation. An appropriate Order follows.

BY THE COURT:

_____

Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated: August 13, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES     )
          ) CR 14-241
          )
  v.

JAMES NASSIDA

## ORDER

   AND NOW, this 13th day of August, 2020, it is hereby ORDERED, ADJUDGED, and

DECREED that Defendant's Motion is DENIED, without prejudice.

        BY THE COURT:

        _____
        Donetta W. Ambrose
        Senior Judge, U.S. District Court